IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DAVID P. COLDESINA, D.D.S., P.C. EMPLOYEE PROFIT SHARING PLAN & TRUST, a domestic trust, and DAVID P. COLDESINA, a trustee,<br><br>        Plaintiffs,<br><br><br><br>                vs.<br><br><br>THE ESTATE OF GREGG P. SIMPER; TED A. MADSEN, an individual; FLEXIBLE BENEFIT ADMINISTRATORS, INC., a Utah corporation; GREYSTONE MARKETING, INC., a Utah corporation; KANSAS CITY LIFE INSURANCE COMPANY, a Missouri corporation; SUNSET FINANCIAL SERVICES, INC., a Washington corporation; and JOHN DOES I-X,<br><br>        Defendants. | ORDER ON SUMMARY JUDGMENT MOTIONS<br><br><br><br><br><br>Case No. 2:00-CV-927 PGC |

This almost-six-year-old ERISA case concerns who should be responsible for the theft of approximately $600,000 from the David P. Coldesina, D.D.S., P.C., Employee Profit Sharing Plan & Trust. Mr. Gregg Simper, the plan's former investment adviser, admitted in a suicide note that he misappropriated plan funds sent to him by Ted Madsen, the plan's accountant. Dr. Coldesina sent plan contributions to Flexible Benefit Administrators for accounting purposes.

Mr. Madsen, a principal with Flexible Benefit Administrators, then forwarded that money to Mr. Simper via  checks payable to Greystone Marketing, Mr. Simper's business.  Unfortunately, the lion's share of those funds were never invested in the plan participants' accounts because Mr. Simper deposited those checks in his own account and then used the plan money for his personal benefit.

This case is before the court after remand from the United States Court of Appeals for the Tenth Circuit.[1]  Familiarity with the facts of this case as recited in the Tenth Circuit's published opinion is presumed.

Before the court now are three pending motions.  Two of these, one from the plaintiffs and one from defendants Madsen and FBA, seek partial summary judgment on whether Madsen and FBA breached their fiduciary duties.  The third motion involves Madsen's attempt to reduce any damages he may owe by the settlement amount paid by Kansas City Life Insurance Company and Sunset Financial Services, Inc. — Mr. Simper's former employers and Madsen's former co-defendants who have since settled with the plaintiffs.

For purposes of these motions, the key holdings from the Tenth Circuit's opinion are that Mr. Madsen was a plan fiduciary under ERISA to the extent he exercised control over plan assets,[2] and that KCL and Sunset were not plan fiduciaries under ERISA.[3]  Based on the Tenth Circuit holdings and the parties' pleadings, the court holds that plaintiffs are entitled to summary

---

[1]*See David P. Coldesina, D.D.S., P.C., Employee Profit Sharing Plan & Trust v. Estate of Simper*, 407 F.3d 1126 (10th Cir. 2005).

[2]*See id.* at 1133–35.

[3]*Id.* at 1139.

judgment because Mr. Madsen breached his fiduciary duties to the plan.  The court also holds

that Mr. Madsen is entitled to a judgment reduction in the amount already paid by the two

settling defendants.  The reasons for these holdings are discussed more fully below.

## I.     PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT

ERISA permits plan participants to bring a civil action against plan fiduciaries who

breach their fiduciary duty.[4]  It also makes fiduciaries personally liable for losses stemming from

any such breach.[5]  As noted above, the Tenth Circuit has already held that Mr. Madsen was a

fiduciary of the Coldesina plan because he exercised control or authority over the plan's assets

and "exercise[d] judgment in naming the payee on the checks he wrote on behalf of the plan."[6]

The issue here is whether Mr. Madsen breached his fiduciary duties.

The court holds that Mr. Madsen breached his duty in at least three ways.  First, he

committed a transfer prohibited by 29 U.S.C. § 1106; second, he is liable for breaching the

standard of care set forth in 29 U.S.C. § 1104 and the cases interpreting it; and third, he is liable

under 29 U.S.C. § 1105 for the breach of Mr. Simper, his co-fiduciary.

### A.     The Accountant Defendants Engaged in a Prohibited Transaction Under § 1106.

The undisputed facts here reveal that Mr. Madsen wrote checks on plan money payable to

Greystone Marketing, Mr. Simper's company.  By doing so, Mr. Madsen engaged in a transaction

prohibited by 29 U.S.C. § 1106(a)(1).

---

[4]*See* 29 U.S.C. § 1132(a)(2).

[5]*See id.* § 1109(a).

[6]*David P. Coldesina, D.D.S., P.C., Employee Profit Sharing Plan & Trust v. Simper*, 407
F.3d 1126, 1133–35 (10th Cir. 2005).

Section 1106(a)(1) prohibits a plan fiduciary such as Madsen from "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect transfer to . . . a party in interest, of any assets of the plan."[7]  By statute, a "party in interest" comprises "any fiduciary."[8]  Mr. Simper was a fiduciary because he "render[ed] investment advice" to the plan.[9]  By writing checks to Mr. Simper's company, Greystone Marketing, Mr. Madsen "direct[ly] or indirect[ly]" transferred plan assets to another plan fiduciary — precisely the type of transaction forbidden by § 1106(a)(1)(D).  Under § 1109(a), Mr. Madsen is personally liable for damages stemming from the breach of this statutory prohibition.[10]

B.    *Mr. Madsen Failed to Exercise Reasonable Prudence.*

Mr. Madsen also breached his fiduciary duty by failing to comply with the prudent man standard of care required by 29 U.S.C. § 1104(a).  This ERISA section instructs plan fiduciaries to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character."[11]

---

[7]29 U.S.C. § 1106(a)(1)(D).

[8]*Id.* § 1002(14)(A).

[9]*Id.* § 1002(21)(A)(ii).

[10]*See id.* § 1109(a).

[11]*Id.* § 1104(a)(1)(B).

In this case, it is undisputed that for nearly seven years, Mr. Madsen sent monthly plan contribution checks to Mr. Simper that were made payable to Mr. Simper's business, Greystone Marketing.  Dr. Coldesina never instructed Mr. Madsen to make checks payable to Greystone Marketing; Madsen named Greystone as the payee based on oral instructions from Mr. Simper.[12] The Tenth Circuit recognized that "the reason Mr. Simper gave for requesting that the checks be made to Greystone Marketing rather than KCL [the investment firm] focused on [Simper's] own business interests and not the plan's interests, suggesting the instruction may not have been coming from the *plan*."[13]  Under these circumstances, Mr. Madsen breached his duty to act solely in the participants' interests.

Related to his breach in failing to ascertain whether Greystone was a proper payee, Mr. Madsen also breached his fiduciary duty by failing to ensure that the contributions were actually invested in the plan's accounts.  Madsen testified that during the seven years he sent checks to Greystone, he never once sought or received written verification (such as plan statements or other investment documents) that would have proven Mr. Simper was investing that money into the plan.[14]  A prudent man of ordinary skill and care would have confirmed *at least once* in seven years that the funds he dispersed wound up in their intended repository.

Based on Mr. Madsen's own admissions, the court holds that Mr. Madsen violated § 1104's prudent man standard by making plan checks payable to Greystone Marketing and by not

---

[12]*See* Ted Madsen Dep. 68:25–74:23.

[13]*Simper*, 407 F.3d at 1135.

[14]*Id.* 82:6–10.

requesting or obtaining verification that those funds were invested for the plan participants'
benefit.

C.      *Mr. Madsen's Breach Makes Him Liable for Mr. Simper's Conduct.*

Mr. Madsen's breach of his duty under § 1104(a)(1) also makes him liable under 29
U.S.C. § 1105(a).  This section states:

> In addition to any liability which he may have under any other provisions of this
> part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary
> responsibility of another fiduciary with respect to the same plan in the following
> circumstances:
> . . . .
> (2) if, by his failure to comply with section 1104(a)(1) of this title
> in the administration of his specific responsibilities which gave rise
> to his status as a fiduciary, he has enabled such other fiduciary to
> commit a breach.[15]

This section describes exactly what happened in this case.  As discussed above, Mr.
Madsen dispersed plan funds directly to Greystone Marketing for approximately seven years
without verifying that Greystone was a proper payee and without confirming that plan funds were
being invested as the plan participants directed.  It is undisputed that during that time, Mr.
Simper did not deposit the funds in the accounts of the plan beneficiaries, but rather stole the
funds for his personal use.  These undisputed facts show that Madsen's lack of prudential care
enabled Simper's embezzlement.  Thus, under 1105(a)(2), Madsen is liable for Simper's breach.

In sum, Mr. Madsen is liable for three separate breaches of his fiduciary duty.  He
breached § 1106 because he transferred funds to Mr. Simper — another fiduciary — via Simper's
company.  He breached his § 1104(a) duty of prudential care by (1) naming Greystone

---

[15]29 U.S.C. § 1105(a)(2).

Marketing, not the investment houses, as the payee on the check, and (2) by never in seven years requesting confirmation that the funds he was obligated to control "solely" in the plan participants' interest were actually deposited in their accounts.  And his breach of § 1104(a) renders him liable under § 1105 for the breach of Simper, his co-fiduciary.  For all these reasons, the court grants the plaintiffs' motion for partial summary judgment.

## II.     MADSEN IS NOT ENTITLED TO SUMMARY JUDGMENT.

Mr. Madsen has filed a cross-motion for summary judgment.  His supporting arguments, which echo his arguments in opposition to plaintiffs' motion, appear to be variations of the same unsuccessful "good soldier" theme he pressed in the Tenth Circuit.  In the earlier appeal, Madsen claimed that "he was not a fiduciary because he simply followed Mr. Simper's instruction in writing checks for the plan."[16]  In no uncertain terms, the Tenth Circuit rejected that argument out of hand, stating that "it fails to recognize the realities of this case.  Regardless of who the accountant defendants dealt with, they were hired by the plan, not Mr. Simper, and were entrusted with the plan's money, not Mr. Simper's.  They simply cannot avoid this fact by asserting that the devil made them do it."[17]

Despite the Tenth Circuit's clear pronouncement, Mr. Madsen again argues that he "completely and faithfully fulfilled [his] limited role[] and responsibilit[y] as [a] fiduciar[y] in control of plan assets."[18]  He argues that he was "duty-bound to follow Simper's instructions,"

---

[16]*Estate of Simper*, 407 F.3d at 1135.

[17]*Id.*

[18]Docket No. 180, at 6.

apparently without regard to what those instructions were.[19]  He also claims that he should not be liable because he "had a fiduciary duty to forward funds as directed by Simper."[20]

The problem with Madsen's argument is that it ignores the obligation § 1104(a)(1) imposes on fiduciaries to discharge their "duties with respect to a plan solely in the interest of the *participants and beneficiaries*."[21]  Regardless of any understanding between Madsen, Coldesina, and Simper as to how the funds were to be handled, ERISA imposed an independent duty on Madsen to ensure that instructions coming from Coldesina or Simper were in the *plan participants'* best interests.  As the Eighth Circuit noted in a related context, "When the direction [to handle plan assets] comes from another fiduciary, as it did in this case, the law of trusts does not excuse a complaint trustee from all fiduciary responsibility."[22]  In other words, "an ERISA trustee who deals with plan assets in accordance with proper directions of another fiduciary *is not relieved of its fiduciary duties to conform to the prudent man standard of care*; to attempt to remedy known breaches of duty by other fiduciaries; and to *avoid prohibited transactions*."[23]

Even if Coldesina, Simper, and Madsen agreed that Madsen would send funds to Simper for Simper to invest, there was no agreement that Madsen could name Simper's company as the payee for seven years without verifying that those funds were properly invested.  Indeed,

---

[19]*Id.* at 8.

[20]*Id.* at 9.

[21]29 U.S.C. § 1104(a)(1) (emphasis added).

[22]*FirsTier Bank, N.A. v. Zeller*, 16 F.3d 907, 911 (8th Cir. 1994).

[23]*Id.* (citations omitted) (emphasis added).

ERISA's prohibited transaction and prudent man sections would have precluded such agreements because they were not in the plan participants' interest.

ERISA requires Madsen to answer to the participants, not Simper. Madsen had no duty to follow Simper's instructions — or take any other actions — if they were not solely in the participants' interests. The opposite is true: Madsen had statutory duties to refrain from any action not solely in the participants' best interests and to affirmatively act in the participants' interest (i.e., by verifying proper deposit of plan funds he dispersed). Madsen's deposition, however, shows that he violated those duties. As such, the court must deny his summary judgment motion and grant plaintiffs'.

## III.   MADSEN IS ENTITLED TO SETOFF FOR SETTLEMENT FUNDS RECEIVED BUT HE IS NOT ENTITLED TO AMEND HIS ANSWER.

After the Tenth Circuit remanded this case, the plaintiffs settled their claims against defendants KCL and Sunset, Mr. Simper's former employers. KCL and Sunset were dismissed with prejudice based on a stipulated motion signed by the plaintiffs.[24] Nearly three months after that dismissal, Mr. Madsen moved the court to order a setoff that will decrease any damages he owes by either (1) the amount of KCL's and Sunset's settlement, or (2) the proportionate amount of the settling defendants' fault. This same motion alternatively seeks leave to amend Madsen's answer to assert indemnity claims against Coldesina, the Estate of Gregg Simper, and Greystone Marketing, or in the alternative, against KCL and Sunset (the settling defendants). The court

_____

[24]Docket No. 163.

holds that Mr. Madsen is entitled to a setoff in the amount of any funds paid by the settling

defendants but that he is not entitled to amend his answer.

  A.   *Madsen Is Entitled to a Judgment Reduction in the Amount Paid by the Settling*
     *Defendants.*

  Citing the "one satisfaction" rule, Madsen argues that the settlement paid by KCL and

Sunset should be "applied as a credit against" any damages he may owe the plaintiffs because

"the defendants' conduct resulted in a single injury."[25]  The Tenth Circuit has not yet held that

this rule applies to ERISA cases, but other courts have held that non-settling defendants in an

ERISA case are entitled to a judgment reduction "at least in the amount of a prior settlement."[26]

Based on the reasoning in these cases, the court concludes that the Tenth Circuit would apply the

one satisfaction rule to ERISA cases.  The court therefore holds that Madsen is entitled to an

order of setoff.

  But this does not end the issue.  The court must next decide the method by which

Madsen's damages should be reduced.  The three basic methods of judgment reduction or

apportionment are the *pro rata* method, the proportionate fault method, and the *pro tanto*

method.[27]  Mr. Madsen admits that the "exact remedy to be applied in satisfaction of these

[setoff] concepts is in the Court's discretion," but urges the court to apply the proportionate fault

---

[25]*U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1236 (10th Cir. 1988), overruled
on other grounds by *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996).

[26]*In re Masters Mates & Pilot Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1030 (2d Cir.
1992); *see also In re Enron Corp. Secs., Deriviative & "ERISA" Litig.*, 228 F.R.D. 541, 558–63
(S.D. Tex. 2005).

[27]*See In re Enron Corp.*, 228 F.R.D. at 560 (citing *Masters Mates*, 957 F.2d at 1028).

method.[28]   Under this theory, the liability of the non-settling defendant (Madsen) is reduced by the percentage of fault attributed to the settling parties (KCL and Sunset).

The court declines to apply this approach, largely because the Tenth Circuit has already held that KCL and Sunset are not ERISA fiduciaries; as such, they would not be subject to joint and several liability for the ERISA violations in this case.[29]   KCL's and Sunset's potential liability stemmed from state torts that were independent of any ERISA claim.  It would be illogical to apportion fault among Madsen, KCL, and Sunset for an ERISA violation when KCL and Sunset are not subject to that statute's requirements.  Thus, the proportionate fault method is inappropriate here.

Instead, the court holds that the *pro tanto* method should be applied here.  This theory will result in any judgment against Madsen being reduced by the amount of settlement damages KCL and Sunset paid.  Applying the *pro tanto* method will ensure that the plaintiffs do not recover more than their total loss and that ERISA liability does not extend to parties not subject to that statute's mandates.

So that the court may enter an appropriate setoff award, the plaintiffs are ordered to file a sealed pleading that discloses the settlement amount paid by KCL and Sunset.  Plaintiffs shall file the pleading within twenty (20) days of the date of this order.  Plaintiffs shall also forward a copy of this pleading to Mr. Madsen's counsel, who are not to disclose the amount other than to the extent necessary to achieve setoff purposes.  Any future pleadings that discuss the setoff

---

[28]Doc. 166, at 7–8.

[29]*See Estate of Simper*, 407 F.3d at 1137–38.

-11-

should not be sealed, unless they mention specifically the setoff amount. If it becomes necessary to mention the specific setoff amount, a separate pleading discussing that issue should be filed under seal.

       B.     *Madsen's Motion to Amend His Answer Is Moot.*

Mr. Madsen has also moved the court for leave to assert a claim for indemnity as to Coldesina, Greystone, KCL, and Sunset. Madsen, however, makes this motion "only in the alternative," stating that "[a] better approach is to award Madsen and FBA an[] offset."[30] Because the court agrees that Madsen should be awarded an offset, it need not reach the issue of whether Madsen is entitled to assert claims for indemnity or contribution.

## CONCLUSION

The court GRANTS the plaintiffs' motion for partial summary judgment (# 171). Mr. Madsen breached his fiduciary duties under 29 U.S.C. §§ 1104–06. Under § 1109, he is personally liable for those breaches. The court DENIES Mr. Madsen's cross-motion for summary judgment (# 179) — he owed duties to the *plan participants* that he failed to fulfill.

---

[30]Doc. No. 166, at 9 n.2.

The court also GRANTS Mr. Madsen's motion for setoff (# 167) and orders that any judgment against him shall be reduced by the settlement amount paid by KCL and Sunset.  Based on this order, Madsen's alternative motions to amend (# 165, 169) are DENIED AS MOOT. The hearing on June 27, 2006, at 3:30 p.m. remains as scheduled, but is converted to hearing on future scheduling in this case.

SO ORDERED.

DATED this 16th day of June, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge